IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PORT OF CORPUS CHRISTI AUTHORITY OF NUECES COUNTY, TEXAS, | § § § § | |
| Plaintiff | § § | Civil Action No. 2:22-cv-00030 |
| v. | § § | |
| THE PORT OF CORPUS CHRISTI, LP and KENNETH BERRY, | § § § | |
| Defendants | § § | |

## PLAINTIFF'S EMERGENCY MOTION FOR REMAND

Plaintiff Port of Corpus Christi Authority of Nueces County, Texas ("Plaintiff" or "the Port Authority") hereby moves to remand the above-captioned case, following removal by Defendants The Port of Corpus Christi, LP ("The Port LP")[1] and Kenneth Berry ("Defendant Berry" and, collectively, "Defendants").

## I.     INTRODUCTION

In Texas state court, Plaintiff asserted a claim for trespass under Texas common law, alleging that Defendant Berry's business operations are causing materials and substances to accumulate on Plaintiff's land. This is a classic state-law dispute that does not require resolution of any federal law issues.

---

[1] After this lawsuit was filed, The Port of Corpus Christi, LP changed its name registered with the Texas Secretary of State to The Port of Texas, LP. However, the named party to this suit remains The Port of Corpus Christi, LP. Additionally, Plaintiff's Complaint alleges that The Port of Corpus Christi, LP continues to use that name despite the formal name change.

In a transparent effort to avoid a temporary restraining order ("TRO"), Defendants removed this case approximately 90 minutes before a hearing on the TRO was scheduled to begin in state court. Defendants' gamesmanship is all the more striking considering they took the opposite position on federal jurisdiction—*and prevailed*—in a similar case between these parties in 2019. Because there is no basis for federal jurisdiction, and Defendants removed solely to delay the hearing on Plaintiff's TRO application, Plaintiff has also filed an Emergency Motion for Expedited Consideration of its Motion to Remand. *See* Dkt. 16. Plaintiff requests that the Court grant both motions and remand this case.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The history of litigation between these parties is lengthy and complex, including several separate cases filed over the past five years. Below, Plaintiff summarizes only the facts relevant to resolution of its Motion to Remand.

### A.  The Parties' Current Dispute

On April 27, 2018, the Port Authority filed suit against The Port LP in County Court at Law No. 4 of Nueces County, Texas, asserting claims for dilution under the Texas Business and Commerce Code and service mark infringement under Texas common law. Following several years of litigation, which focused primarily on counter-claims asserted by the Defendant, Plaintiff filed a Second Amended Petition on February 11, 2022 (hereinafter the "Complaint" or "Compl."). **Ex. A** (2/11/2022 Complaint). In the Complaint, Plaintiff asserted claims against The Port LP and Defendant Berry for dilution, infringement, and falsely implying governmental affiliation in violation of a new provision of the Texas Civil Practice and Remedies Code. *See id.* ¶¶ 10-41, 55-100. Defendants contend only that these claims are "trivial" if not moot and do not dispute that

these claims, and the related request for injunctive relief, arise under state law and do not implicate any federal questions. *See* Dkt. 1 (Notice of Removal) ¶¶ 53-55.

In the February 11, 2022 Complaint, Plaintiff also asserted a new claim for trespass under Texas common law. *See* Compl. ¶¶ 42-54, 101-117. The Complaint alleges that Defendant Berry operates a Dredge Material Placement Area ("DMPA") on land known as Berry Island, directly adjacent to submerged land owned by Plaintiff. *Id.* ¶¶ 43-46. As a result of dredge placement activities, Defendant Berry has caused and will continue to cause materials and substances to settle on Plaintiff's submerged land without Plaintiff's authorization or consent. *Id.* ¶¶ 46, 48, 51-53. These are not allegations of *de minimis* harm: Recent photographic evidence demonstrates that in some areas, materials have accumulated to the point that sandbars and a new island have formed *above* the low-tide waterline. *Id.* ¶ 48. As relief, Plaintiff seeks damages, including the cost of restoring its property, as well as an injunction prohibiting Defendant Berry from causing the discharge of any materials or substances from Berry Island that settle onto Plaintiff's submerged land. *Id.* ¶¶ 106, 108, 115.

The Complaint specifically notes that the trespass claim does not challenge Defendants' compliance with any permit and exists "regardless" of such compliance:

> Plaintiff's claim is not challenging whether Defendant Berry, and/or a party contracting with Defendant Berry, are complying with applicable state-issued permits. ***Regardless of compliance with a TCEQ, USACE, or other permit*** (which Plaintiff does not concede), the dredge placement activities on Berry Island have in the past resulted, and in the future are practically certain to result, in suspended solids and other materials encroaching upon Plaintiff's submerged land.

*Id.* ¶ 50 (emphasis added). This is the Complaint's sole reference to the state and federal permits required to operate the DMPA. Nothing in the Complaint challenges the adequacy of the federal permitting scheme or Defendants' compliance with it. No part of the Complaint mentions federal

3

law, much less the Rivers and Harbors Act or the Clean Water Act on which Defendants base their Notice of Removal. Instead, the Complaint alleges that regardless of whether Defendants' dredge placement activities adhere to all *federal* laws and regulations, they cause an actionable trespass under *state* tort law. *See id.*; *see also, e.g.*, *FPL Farming Ltd. v. Env't Processing Sys., L.C.*, 351 S.W.3d 306, 311 (Tex. 2011) (holding that a permit "does not act to immunize the permit holder from civil tort liability").

### B.  The "Good Hope" Case

On January 15, 2019, The Port LP and another entity, 361 Holdings, LLC, filed suit against the Port Authority and its CEO, Sean Strawbridge, in the 156th Judicial District Court in San Patricio, Texas. There, the parties' positions were essentially reversed: The Port LP alleged that the Port Authority operated a DMPA on land known as the Good Hope Site and that the Port Authority's activities threatened adjacent land owned by The Port LP. *See* **Ex. B** (2/8/2019 Good Hope Order) at 2-3 (Tagle, J.).

The Port Authority and Mr. Strawbridge removed the case to the United States District Court for the Southern District of Texas, Corpus Christi Division, and The Port LP moved to remand. *Id.* at 3. The Port Authority's basis for invoking federal jurisdiction was far stronger than the Port LP's basis here: In the Good Hope case, The Port LP "allege[d] several times in their complaint that Defendants violated 'federal law' and failed to obtain the necessary permit from the United States Army Corps of Engineers." *Id.* at 5. The Port LP also raised issues regarding "the transfer of the Navy's rights to discharge dredged material to the Port Authority." *Id.* at 6.

Nevertheless, The Port LP argued that the federal court lacked jurisdiction, refuting many of the same arguments it now raises, and the Court agreed. Among other things, the Court held that even the explicit allegations of federal law violations in The Port LP's complaint were

4

insufficient to support federal question jurisdiction. *Id.* (citing *Davis v. Eagle Oil & Gas Co.*, No. W-08-CA-107, 2008 WL 11334171, at *2 (W.D. Tex. Oct. 10, 2008)). The Court further held that "[t]he presence of a disputed federal issue," namely, whether the Port Authority was required to obtain a federal permit, was not "necessarily dispositive." *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Because The Port LP's complaint "simultaneously rel[ied] on alleged violations of city, state, and federal laws," and federal law was not the "exclusive basis" asserted for liability, no federal jurisdiction existed. *Id.* at 7 (collecting cases). For these reasons, the Court concluded that The Port LP's claims did not "fall into the 'special and small category' of cases in which Plaintiffs' state law claims arise under federal law." *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). The Court therefore remanded the suit to state court. *Id.* at 8.

## III.    APPLICABLE LEGAL STANDARDS

On a motion to remand, "[t]he party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (quoting *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013)). This is a heavy burden, as "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Additionally, because "removal raises significant federalism concerns," "any doubt as to the propriety of removal should be resolved in favor of remand." *Valencia v. Allstate Tex. Lloyd's*, 976 F.3d 593, 595 (5th Cir. 2020) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)); *see also, e.g.*, *Scarlott*, 771 F.3d at 887 ("Any ambiguities are construed against removal and in favor of remand to state court." (quoting *Mumfrey*, 719 F.3d at 397)).

To invoke federal question jurisdiction, removing defendants must prove that "a federal question appears on the face of the plaintiff's well-pleaded complaint." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 535 (5th Cir. 2017) (quoting *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011)). This burden is satisfied only when the "complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983)). In the latter scenario, it is well settled that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). Rather, federal jurisdiction is limited to "a special and small category of cases" in which the federal issue at stake is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citation omitted).

In addition, "[a] plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist." *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013) (quoting *Elam*, 635 F.3d at 803). "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987)). "[I]t is the character of the action and not the defense which determines whether there is federal question

jurisdiction." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 238 (1952)).

## IV.   ARGUMENT

There is no dispute that Plaintiff's trespass claim arises under Texas state law and is not a federal cause of action. Rather, Defendants present a scattershot of theories to attempt to invoke federal jurisdiction: First, Defendants contend that Plaintiff's right to relief under Texas state trespass law necessarily depends on resolution of substantial questions of federal law. Specifically, Defendants claim that the Complaint implicates the federal permitting scheme for DMPAs in various ways and relates to the federal Rivers and Harbors Act and Clean Water Act. Second, Defendants assert that the Army Corps has exclusive jurisdiction to prosecute a DMPA permit violation, which completely preempts the field. Third, Defendants argue that this Court has removal jurisdiction because the Complaint asserts maritime claims. All of these arguments rely on mischaracterizations of the Complaint and cases cited in the Notice of Removal. None comes close to satisfying Defendants' burden of proving federal jurisdiction.

### A.   Plaintiff's Right to Relief Does Not Depend on Federal Law

Under Texas law, trespass has three elements: "(1) entry (2) onto the property of another (3) without the property owner's consent or authorization." *Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015). None of these elements "necessarily raise[s]" a "substantial" and "disputed" issue of federal law. *Gunn*, 568 U.S. at 258. Instead, as pleaded in the Complaint, these elements involve straightforward factual questions, namely: (1) whether the Defendants' dredge placement activities have caused and will cause materials and substances to settle on land that does not belong to them, *see* Compl. ¶¶ 46, 48, 51-53, (2) whether the land in

question belongs to the Plaintiff, *see id.* ¶¶ 43-44, and (3) whether Plaintiff consented to or authorized any such entry, *see id.* ¶ 53.

The Notice of Removal raises several convoluted arguments in an attempt to establish a connection between Plaintiff's trespass claim and federal law. None of these arguments identifies a proper basis for federal jurisdiction.

***First***, Defendants' reliance on the Fifth Circuit's decision in *Board of Commissioners v. Tennessee Gas Pipeline Co.* is misplaced. *See* Notice of Removal ¶¶ 6-10, 35, 46. There, the plaintiff brought several state-law claims for negligence and nuisance based on dredging activities conducted by a group of 97 defendants. *See Bd. of Comm'rs v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 720 (5th Cir. 2017). Contrary to Defendants' claim, the Fifth Circuit did not find federal jurisdiction simply because the underlying dredge activities were "subject to an extensive federal permitting scheme." *See* Notice of Removal ¶ 7. Instead, federal jurisdiction existed because "the Board's complaint dr[ew] on federal law as the ***exclusive basis*** for holding [d]efendants liable[.]" *Bd. of Comm'rs*, 850 F.3d at 722 (emphasis added). Because there was an "absence of any state law grounding for the duty the Board would need to establish for the defendant to be liable," the applicable "duty [had] to be drawn from federal law." *Id.* at 723. As such, the Board's state-law negligence and nuisance claims "c[ould] not be resolved without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law." *Id.*

None of the factors supporting federal jurisdiction in *Board of Commissioners* is present here. While federal law served as the "***exclusive basis***" for the defendant's duty—and thus, liability—in *Board of Commissioners*, *id.* at 722 (emphasis added), Defendants' liability in this case is based ***exclusively*** on Texas law. The Port Authority's trespass claim does not rely on any violation of federal law to establish Defendants' duty; that duty arises solely under state law. And

as discussed further below, Defendant Berry's liability for trespassing on Plaintiff's property is not dependent upon, or preempted by, permits issued by the Army Corps.

The Fifth Circuit and its district courts have consistently rejected similar attempts to remove based on *Board of Commissioners*. *See*, *e.g.*, *Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 375 (5th Cir. 2021) (distinguishing *Board of Commissioners* because the plaintiffs "explicitly disclaim[ed] any reliance on federal law"); *Valles v. Bayou Place, L.P.*, No. 4:19-CV-01725, 2019 WL 7666694, at *6-7 (S.D. Tex. Dec. 19, 2019) (distinguishing *Board of Commissioners* because the plaintiff "did not specifically reference or even hint at the applicability of any federal statute"), *report and recommendation adopted*, No. 4:19-CV-01725, 2020 WL 374862 (S.D. Tex. Jan. 21, 2020); *Alexander v. Woodlands Land Dev. Co. L.P.*, 325 F. Supp. 3d 786, 795 (S.D. Tex. 2018) (distinguishing *Board of Commissioners* and reasoning that "[b]ecause the underlying duty exists under state law, state law controls whether Defendant's actions were negligent or grossly negligent"); *Stutes v. Gulfport Energy Corp.*, No. 6:16-CV-01253, 2017 WL 4286846, at *15 (W.D. La. June 30, 2017) (finding no federal jurisdiction because "[u]nlike *Board of Commissioners*, [p]laintiff's state-law claims do not raise a federal issue"), *report and recommendation adopted*, No. CV 6:16-1253, 2017 WL 4274353 (W.D. La. Sept. 26, 2017).

**Second,** Defendants argue that the trespass claim cannot be resolved without determining whether they obtained and complied with all requisite federal permits. *See* Notice of Removal at ¶¶ 6-8 (contending that the DMPA is subject to an "extensive federal permitting scheme"). But the Complaint expressly notes that "Plaintiff's claim is not challenging" Defendants' compliance with any permits, and the trespass exists "[r]egardless of compliance with a TCEQ, USACE, or other permit." Compl. ¶ 50. And Texas courts have specifically rejected Defendants' contention that compliance with a permit immunizes the permitholder from civil tort claims such as common-law

trespass. *See, e.g.*, *FPL Farming*, 351 S.W.3d at 311 (Tex. 2011) ("As a general rule, a permit granted by an agency does not act to immunize the permit holder from civil tort liability from private parties for actions arising out of the use of the permit."); *id.* at 312 (rejecting argument that "a permit could eradicate a trespass claim against a permit holder"); *Manchester Terminal Corp. v. Tex. TX TX Marine Transp., Inc.*, 781 S.W.2d 646, 650 (Tex. App.—Houston [1st Dist.] 1989, writ denied) ("Even if a commercial enterprise holds a valid statutory permit to conduct a particular business, the manner in which it performs the activity may give rise to an action for injunctive relief or damages."); *cf. Magnolia Petroleum Co. v. R.R. Comm'n*, 141 Tex. 96, 100 (1943) ("The permit may thus be perfectly valid, so far as the conservation laws are concerned, and yet the permittee's right to drill under it may depend upon his establishing title in a suit at law."). As the Texas Supreme Court has put it, "a permit is not a get out of tort free card." *FPL Farming*, 351 S.W.3d at 311.

Defendants emphasize—in bold, underlined, red font—an alleged requirement in a recent Army Corps permit that "[a]ll dredged material will be placed on Berry Island." Notice of Removal ¶ 34. But the terms of any such permit have *nothing to do* with any element of Plaintiff's claim for trespass. Those terms have no bearing on the resolution of where, as a factual matter, Defendants' dredge materials have been going *after placement* and are therefore likely to go in the future, nor is the Army Corps' approval of Defendants' activities relevant to the question whether Plaintiff authorized Defendants to discharge materials and substances *onto Plaintiff's land*. *See FPL Farming*, 351 S.W.3d at 311 ("[O]btaining a permit simply means that the government's concerns and interests, at the time, have been addressed[.]"). Again, the Complaint alleges that "[r]egardless" of whether Defendants have obtained and complied with all applicable permits, *they are still committing trespass*. *See* Compl. ¶ 50.

At most, Defendants appear to preview that permit compliance may form part of their defense. *See, e.g.*, Notice of Removal ¶ 11(a)(i) ("[T]he Army Corps has permitted the very conduct about which Plaintiff complains[.]"); *id.* ¶¶ 22-28, 30 (discussing the thoroughness of the Army Corps' permitting process and Defendants' receipt of "numerous permits"); *id.* ¶ 31 (arguing that Defendants' DMPA has been operating "precisely as intended by the Corps and permitted so to do"); *id.* ¶ 35 ("Plaintiff's quarrel is not truly with the Defendants. Rather it is with the Army Corps, who pursuant to its extensive permitting process, approved the activities about which Plaintiff complains."). However, it is well settled that a federal-law defense does not create federal jurisdiction: "[I]t is the character of the action and not the defense which determines whether there is federal question jurisdiction." *Thurston Motor Lines*, 460 U.S. at 535 (citation omitted); *accord Hood*, 737 F.3d 78 at 89 (holding that a defendant cannot "inject[] a federal question" into a suit based on state-law claims and thereby "select[] the forum") (citation omitted). Thus, none of Defendants' arguments about their compliance with the federal permitting scheme establishes a basis for federal jurisdiction.

**Third,** Defendants argue that the Complaint is a "collateral attack on the entire Army Corps permitting regimen." Notice of Removal ¶ 9. That is incorrect. Plaintiff has not sued the Army Corps. The Complaint does not allege that the Army Corps' permitting process is deficient, either in general or with respect to Defendants' DMPA. Nor does the Complaint allege that any permits were improperly issued, should have had different terms, or should protect Plaintiff's land. No part of the parties' dispute turns on the propriety of the Army Corps' permitting process or the terms of any permits it issued.

**Fourth,** Defendants contend that the relief Plaintiff seeks depends on a federal law issue because dredge placement activities "cannot be changed" or "abandoned" without the Army

Corps' approval. *Id.* ¶ 35. The Notice of Removal fails to cite any evidence or authority to support this claim, and it is plainly untrue. Even assuming that any such requirements could be found in Defendants' permits, they would establish a floor, not a ceiling—they would not prohibit Defendants from implementing additional safeguards to prevent materials and substances from settling on Plaintiff's land. *See FPL Farming*, 351 S.W.3d at 311 (holding that a party may be "in compliance" with applicable regulations and still liable in tort). Likewise, a permit merely grants "permission" to operate, *id.* ¶ 34; it creates no obligation for Defendant Berry to continue his dredge placement activities. *See FPL Farming*, 351 S.W.3d at 310-11 ("A permit removes the government imposed barrier to the particular activity requiring a permit.").

Defendants also cite *Board of Commissioners* to claim federal jurisdiction exists because Plaintiff seeks damages for the costs to restore its property. *See* Notice of Removal ¶ 11(a)(iv). Once again, *Board of Commissioners* is inapplicable. There, the claim arose under federal law, in part because the requested remedy "could not be required under any state-law based conception of negligence." *Bd. of Comm'rs*, 850 F.3d at 722. Here, however, the requested relief is simply that Defendants cover the costs to restore Plaintiff's property to its condition prior to the trespass. *See* Compl. ¶ 106. Under Texas law, the damages for a trespass claim are "ordinarily the cost and expense of restoring the land to its former condition." *Vaughn v. Drennon*, 372 S.W.3d 726, 738 (Tex. App.—Tyler 2012, no pet.); *see also Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 921 (Tex. 2013) (holding that trespass damages "generally includ[e] the cost to repair any damages to the property"). Plaintiff's request that Defendants pay for the damage caused by their trespass is consistent with, and in fact required by, Texas state law. Moreover, the Notice of Removal makes no attempt to explain how payment or receipt of money damages would require action in navigable waters or be subject to the Army Corps' approval.

**Fifth,** citing *Chambers-Liberty Counties Navigation District v. State*, Defendants go so far as to suggest that Plaintiff has no property rights at all in the affected land, and thus "there is no conceivable way a federal court exercising jurisdiction here could 'open up the floodgates' for state claims of others" being removed. Notice of Removal ¶ 40. Setting aside the illogic of Defendants' reasoning, this overreach is, of course, incorrect. Under Texas law, submerged land patented to navigation districts under Article 8225—like the land at issue here—is owned by navigation districts in fee simple. *See, e.g.*, *Tex. Parks & Wildlife Dep't v. Champlin Petroleum Co.*, 616 S.W.2d 668, 672 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.) ("We hold that the Navigation District owns a fee simple title (except minerals) to the lands described in the subject patents."); *Natland Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 62 (Tex. App.—Corpus Christi 1993, writ denied) ("The statute intends to pass a clear title in fee simple (except minerals) to the navigation district.").

Nor does the *Chambers* decision impact Plaintiff's property rights in the submerged lands such that Plaintiff's right to relief would depend on a violation of federal law. In *Chambers*, a lease issued by a navigation district for the specific purpose of oyster farming was found to violate the "extensive regulations" issued by the Department of Parks and Wildlife, which had "authority under Texas law to regulate the conservation and harvesting of oysters." *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 353 (Tex. 2019). That a navigation district cannot use or lease its land in a manner that would violate Texas law provides no support for Defendants' novel claim that Plaintiff wholly lacks any property rights in the submerged land. Indeed, in *Chambers*, the Texas Supreme Court specifically stated that the navigation district's "general authority to acquire and lease land is not in dispute." *Id.* at 351.

**Finally,** the Notice of Removal contains several vague references to the Rivers and Harbors Act and the Clean Water Act. *See* Notice of Removal ¶¶ 7, 13, 21, 28, 35. But the Defendants do not identify how any part of Plaintiff's trespass claim relies on or relates to either of these statutes. Even if proving a violation of these laws would somehow establish liability for trespass—which it would not—determination of any such question is not necessary to resolution of the trespass claim because that claim can be resolved solely on the state-law bases alleged in the Complaint. *See Davis v. Eagle Oil & Gas Co.*, No. W-08-CA-107, 2008 WL 11334171, at *3 (W.D. Tex. Oct. 10, 2008) ("A determination of any [federal] question is therefore not necessary to the resolution of the breach of contract claim, since the claim could be resolved solely on the basis of the failure to pay royalties or one of the other alleged contractual bases.").

In effect, Defendants contend that federal jurisdiction must exist because their business holds federal permits and is subject to federal law. This attenuated connection is precisely why courts hold that "[n]ot every state-law claim that implicates federal law triggers federal-question jurisdiction." *Arnold v. Bradley*, No. 4:08-CV-170-Y, 2008 WL 11350052, at *5 (N.D. Tex. July 25, 2008) (citing *Grable*, 545 U.S. at 314). If the mere presence of a federally regulated party were sufficient to establish jurisdiction, federal courts would be flooded with routine state-law tort claims—including, for example, trespass and nuisance claims against energy companies, malpractice claims against health care providers, product liability claims against cosmetics manufacturers, and breach of contract claims against financial institutions. Thus, contrary to Defendants' assurances, *see* Notice of Removal ¶¶ 37, 40, adopting their theory would indeed tremendously disrupt the "federal-state balance" of cases. *Gunn*, 568 U.S. at 258. Because Defendants cannot point to any question of federal law that is "(1) necessarily raised, (2) actually

14

disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress," federal jurisdiction does not exist. *Id.*

### B. Plaintiff's Claim Is Not Preempted by Federal Law

Perhaps recognizing that Plaintiff's trespass claim does not raise any issue of federal law, Defendants next contend that "the Army Corps has exclusive jurisdiction" over dredge placement activities, "completely preempting the field." Notice of Removal ¶ 15; *see also id.* ¶¶ 11(a)(ii), 14, 21-22, 31 (arguing that the Army Corps has "exclusive" authority over the navigable waters of the Corpus Christi Ship Channel and Defendants' DMPA). Defendants cite no caselaw in support of their preemption theory, which is flatly refuted by Supreme Court and Fifth Circuit authority.

To establish federal removal jurisdiction based on preemption, Defendants must prove **complete** preemption. *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) ("Complete preemption, which creates federal removal jurisdiction, differs from more common ordinary preemption, which does not.").[2] The doctrine of complete preemption serves to attack an artful pleading by "recharacteriz[ing] an asserted state-law claim as in fact a claim arising exclusively under federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 61 & n.12 (2009) (citing 14B Wright & Miller § 3722.1). Complete preemption applies when a federal statute "so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (quoting *New Orleans & Gulf*

---

[2] The Notice of Removal could also be construed as invoking field preemption, meaning "Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law," *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016) (citation omitted). However, field preemption and other forms of "ordinary preemption" are affirmative defenses that do not provide a basis for removal. *See, e.g.*, *Caterpillar*, 482 U.S. at 393 ("The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under [a federal statute] does not establish that they are removable to federal court.") (alteration in original); *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 276 (5th Cir. 2004) ("Conflict preemption does not allow removal to federal court but is an affirmative defense against claims that are not completely preempted…."); *Carter v. Cent. Reg'l W. Virginia Airport Auth.*, No. 2:15-CV-13155, 2016 WL 4005932, at *17 (S.D.W. Va. July 25, 2016) ("The Supreme Court has clarified, repeatedly, that the defensive theories–conflict and field preemption –may not serve as bases for removal.") (collecting cases).

*Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008)); *see also, e.g.*, *Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000) (Defendants must show that "Congress intended not just to preempt a state law to some degree, but to altogether substitute a federal cause of action for a state cause of action.").

Under the Fifth Circuit's test for complete preemption, a defendant must demonstrate that:

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of that right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

*Bellfort Enters. Inc. v. PetroTex Fuels Inc.*, 339 F. App'x 416, 418-19 (5th Cir. 2009) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008)). This form of preemption is "extraordinary" and "a narrow exception to the well-pleaded complaint rule." *Elam*, 635 F.3d at 803 (citations omitted); *see also, e.g.*, *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 752 (1983) (Brennan, J., concurring) ("[C]omplete preemption is not lightly implied.").

The Notice of Removal fails to even identify a relevant federal cause of action. It focuses entirely on the Army Corps' authority, with no analysis of the supposed preemptive effect on Plaintiff's trespass claim. *See* Notice of Removal ¶ 13 (alleging that Section 404 of the Clean Water Act and related regulations give the Army Corps "complete control" over dredge-related activities); *id.* ¶ 21 (alleging that the Rivers and Harbors Act grants the Army Corps "exclusive authority" to regulate and control all facets of dredge placement activities). Defendants certainly have not demonstrated that (1) either the Clean Water Act or the Rivers and Harbors Act creates a cause of action to protect property interests from trespasses, (2) either statute creates federal jurisdiction for the purpose of enforcing private property rights, or (3) Congress clearly intended for claims like Plaintiff's to be subject to federal jurisdiction.

In any event, the Supreme Court has specifically held that the Clean Water Act does not preempt state common-law causes of action like Plaintiff's claim for trespass. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 497 (1987). In *International Paper*, the Court addressed a state-law nuisance claim based on allegations that a New York company discharged pollutants into Lake Champlain that ultimately landed on private property in Vermont. *Id.* at 483-84. The plaintiffs sought both damages and injunctive relief. *Id.* at 484. While noting that Congress had created a "detailed" federal permit program, the Court held that the Act's "savings clause negates the inference that Congress 'left no room' for state causes of action." *Id.* at 489, 492. Because the savings clause "specifically preserves other state actions," "nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State." *Id.* at 497; *see also id.* at 500 (Brennan, J., concurring) ("I concur wholeheartedly in the Court's judgment that the Clean Water Act … does not pre-empt a private nuisance suit….").[3] In a more recent suit for common-law negligence, the Supreme Court affirmed that there is "no clear indication of congressional intent to occupy the entire field of pollution remedies," so the Clean Water Act "does not displace compensatory remedies for consequences of water pollution." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489 (2008).

This authority forecloses Defendants' argument that the Clean Water Act (or regulations based upon it) completely preempts Plaintiff's claim for trespass. Courts have likewise held that the "plain language" of the Rivers and Harbors Act "does not even hint at a Congressional intent to preempt" state-law trespass claims. *Hollingsworth v. Richardson*, No. 3:08-CV-01613-CLS,

---

[3] The Clean Water act contains two savings clauses: One states that "[n]othing in this section [providing for citizen suits] shall restrict any right which any person (or class of persons) may have under any statute *or common law* to seek enforcement of any effluent standard or limitation *or to seek any other relief*." 33 U.S.C. § 1365 (emphasis added). The other preserves the states' right to adopt or enforce more stringent pollution regulations, as well as the states' jurisdiction over their own waters. *Id.* § 1370.

2008 WL 11422614, at *5 (N.D. Ala. Sept. 26, 2008). Because Defendants have not shown that federal law "completely displaces state law," their theory of federal preemption cannot establish federal jurisdiction. *Elam*, 635 F.3d at 803.

### C.   Removal Based on an Alleged General Maritime Claim Cannot Stand

The Court need not reach the fact-intensive question of whether this case qualifies as a "general maritime claim" because even if it does, that would not provide a valid basis for removal. It is well accepted that maritime cases filed in state court cannot be removed to federal court unless an independent basis for federal jurisdiction exists. While federal courts have original jurisdiction over maritime claims under 28 U.S.C. § 1333, they do not have removal jurisdiction over maritime cases brought in state court. *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 219 (5th Cir. 2013). Instead, such lawsuits are exempt from removal by the "saving-to-suitors" clause of the jurisdictional statute governing admiralty claims and therefore may only be removed when original jurisdiction is based on another jurisdictional grant, such as diversity of citizenship. *See id.*

Nothing in the Federal Courts Jurisdiction and Venue Clarification Act of 2011 changed this well-established rule. In arguing that the 2011 amendment eliminated the requirement of an independent jurisdictional basis to remove maritime claims, Defendants cite two cases: *Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013) (Miller, J.) and *Wells v. Abe's Boat Rentals Inc.*, No. H–13–1112, 2013 WL 3110322 (S.D. Tex. 2013) (Rosenthal, J). But in the nine years since *Ryan* and *Abe's Boat Rentals* were decided, the vast majority of courts in the Southern District of Texas have adopted the opposite view.[4] Indeed, this is the majority view in the country.

---

[4] *See, e.g.*, *Harrison v. Crowley Mar. Corp.*, 181 F. Supp. 3d 441, 444 (S.D. Tex. 2016); *Waddell v. Edison Chouest Offshore*, 93 F. Supp. 3d 714, 720-21 (S.D. Tex. 2015); *Jimenez v. U.S. Envtl. Servs., LLC*, No. 3:14-CV-0246, 2015 WL 4692850, at *1-4 (S.D. Tex. Aug. 6, 2015); *Ritchey v. Kirby Corp.*, No. 3:14-CV-0272, 2015 WL 4657548, at *1-4 (S.D. Tex. Aug. 5, 2015); *Clear Lake Marine Ctr., Inc. v. Leidolf*, No. H-14-3567, 2015 WL 1876338, at *1-2 (S.D. Tex. Apr. 22, 2015); *Parker v. U.S. Envtl Servs., LLC*, No. 3:14-CV-292, 2014 WL 7338850, at *2-6 (S.D. Tex. Dec. 19, 2014); *Rutherford v. Breathwite Marine Contrs.*, Ltd., 59 F. Supp. 3d 809, 812-13 (S.D. Tex. 2014); *Rogers v.*

*See* Michael F. Sturley, *Removal into Admiralty: The Removal of State-Court Maritime Cases to Federal Court*, 46 J. Mar. L. & Com. 105, 121 (2015) ("'[T]he majority view [is] that general maritime claims are not removable, despite the changes to 28 U.S.C. § 1441.' . . . The emerging majority view is also 'the correct view.'").

It is also the view of this Court. In *Figueroa v. Marine Inspection Services, LLC*, this Court expressly rejected the *Ryan* Court's reasoning and reaffirmed that general maritime claims are not removable absent some other independent basis for federal jurisdiction, explaining:

> The key to the treatment of maritime cases involving saving to suitors claims lies in 28 U.S.C. § 1441(a)—predicate eligibility. To be eligible for removal, a case must fall within the "original jurisdiction" of the federal courts .... While the district courts generally have "original jurisdiction" over admiralty or maritime cases, the saving to suitors clause exempts from that "original jurisdiction" "all other remedies to which [suitors] are otherwise entitled." 28 U.S.C. § 1333(1). Any remedy, such as a right to a jury trial, that does not fall within the traditional admiralty or maritime jurisdiction thus is not subject to "original jurisdiction" as defined by § 1333. If it is not subject to "original jurisdiction," it is not removable under § 1441. *The amendment to § 1441(b) did not address the "original jurisdiction" requirement.*

28 F. Supp. 3d 677, 680 (S.D. Tex. 2014) (Ramos, J.) (emphasis added). This Court held that while it would have had original jurisdiction over the action had the plaintiff filed it in federal court, "'original jurisdiction' evaporated when he filed his action in state court, making [the case] nonremovable on the basis of admiralty jurisdiction." *Id.*

Even the authors of the *Ryan* and *Abe's Boat Rentals* opinions have subsequently reconsidered their holdings. Judge Gray Miller—the presiding judge in the *Ryan* case—later reversed course and ruled that the saving-to-suitors clause prevents removal of maritime cases

---

*BBC Chartering Am., LLC*, No. 4:13-CV-3741, 2014 WL 819400, at *1 (S.D. Tex. Mar. 3, 2014); *Alexander v. Seago Consulting, LLC*, No. 4:14-CV-1292, 2014 WL 2960419, at *1 (S.D. Tex. 2014); *Mims v. Deepwater Corrosion Servs., Inc.*, 90 F. Supp. 3d 679, 691-692 (S.D. Tex. 2015); *Cormier v. Chet Morrison Contractors*, 85 F. Supp. 3d 880, 883 (S.D. Tex. 2015).

absent an independent basis of jurisdiction. In *Sanders v. Cambrian Consultants (CC) America, Inc.*, Judge Miller explained that when he considered *Ryan*, caselaw and legal commentary had not yet addressed how the amendment to the removal statute affected admiralty claims in light of historical precedent or the saving-to-suitors clause. *See* 132 F. Supp. 3d 853, 858 (S.D. Tex. 2015). In departing from his holding in *Ryan*, Judge Miller cited *Gregoire v. Enterprise Marine Services, LLC*, 38 F. Supp. 3d 749 (E.D. La. 2014), as providing "a convincing argument why the amendments to the removal statute do not impact the historical bar on removal of maritime claims filed at law in state court." *Sanders*, 132 F. Supp. 3d at 858; *see also Belanger v. McDermott Int'l, Inc.*, No. H-19-1591, 2019 WL 5595452, at *2 (S.D. Tex. Oct. 30, 2019) (Miller, J.); *Jackson v. Am. Bureau of Shipping*, No. H-20-109, 2020 WL 1743541, *2 (S.D. Tex. 2020) (Miller, J.).

Likewise, Chief Judge Rosenthal—the presiding judge in *Abe's Boat Rentals*—has since rejected the holding of that case. In *Pelagidis v. Future Care, Inc.*, Judge Rosenthal discussed the strong trend against the holding of *Ryan,* as well as the Fifth Circuit's mandate to strictly construe the removal statute and resolve any doubts as to the propriety of removal in favor of remand, and concluded that "***removal based on the general maritime-law claims cannot stand***." No. H-17-3798, 2018 WL 2221838, at *4-8 (S.D. Tex. May 15, 2018) (emphasis added); *see also Ibarra v. Port of Houston Auth. of Harris Cnty.*, 526 F. Supp. 3d 202, 214-16 (S.D. Tex. 2021) (Rosenthal, J.) (same).

Here, Defendants have failed to establish an independent basis for federal jurisdiction. Absent an independent basis for jurisdiction, general maritime claims are not removable, despite the changes to 28 U.S.C. § 1441. The suit should therefore be remanded.

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that its Motion for Remand be granted.

DATED: February 18, 2022

By: */s/ Ashley M. Kleber, signing with permission*
Earnest W. Wotring
**Attorney-In-Charge**
State Bar No.: 22012400
Federal ID No.: 15284
ewotring@bakerwotring.com
Debra Tsuchiyama Baker
dbaker@bakerwotring.com
John Muir
jmuir@bakerwotring.com
David George
dgeorge@bakerwotring.com
BAKER • WOTRING LLP
700 JPMorgan Chase Tower
600 Travis St.
Houston, Texas 77002
(713) 980-1700
(713) 980-1701 (Fax)

*Of Counsel*:
Barrett H. Reasoner
breasoner@gibbsbruns.com
Ashley M. Kleber
akleber@gibbsbruns.com
Gabriel D. Kaim
gkaim@gibbsbruns.com
Caitlin Halpern
chalpern@gibbsbruns.com
GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
(713) 650-8805
(713) 750-0903 (Fax)

*Of Counsel continued:*
Macey Reasoner Stokes
macey.stokes@bakerbotts.com
Travis L. Gray
travis.gray@bakerbotts.com
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
713-229-1369
713-229-7869 (Fax)

and

Doug Allison
doug@dallisonlaw.com
LAW OFFICES OF DOUGLAS ALLISON
403 N. Tancahua St.
Corpus Christi, Texas 78401
(361) 888-6002
(361) 888-6651 (Fax)

**ATTORNEYS FOR PLAINTIFF PORT OF CORPUS CHRISTI AUTHORITY OF NUECES COUNTY, TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2022, a copy of the foregoing Motion to Remand was served on all counsel of record by operation of the CM/ECF filing system.

*/s/  Caitlin Halpern*
Caitlin Halpern

**CERTIFICATE OF CONFERENCE**

I hereby certify that on February 17, 2022, I conferred via email with counsel for Defendants regarding the relief requested herein. Counsel advised that Defendants oppose this Motion to Remand.

*/s/ Ashley Kleber*
Ashley Kleber