United States Courts
Southern District of Texas
FILED

APR 06 2023

Nathan Ochsner, Clerk of Court

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
January 6, 2023
Lyle W. Cayce
Clerk

No. 22-40124

---

Port of Corpus Christi Authority of Nueces County, Texas,

*Plaintiff—Appellee,*

versus

The Port of Corpus Christi L.P.; Kenneth Berry,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:22-CV-30

---

Before Higginbotham, Southwick, and Higginson, *Circuit Judges.*

Leslie H. Southwick, *Circuit Judge*:

The Port of Corpus Christi Authority of Nueces County, Texas (a governmental entity), sued The Port of Corpus Christi, L.P. (a private entity) and Kenneth Berry in state court. The claims were for trespass and encroachment on its submerged land that resulted from dredge operations occurring in a ship channel. The defendants removed the case, but the district court remanded, holding there was no basis for removal either under the federal officer removal statute or due to a federal question. We AFFIRM.

No. 22-40124

## FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Berry owns Berry Island, which lies in the La Quinta Ship Channel near Corpus Christi, Texas. He also owns a company named The Port of Corpus Christi, L.P. When there is no reason to distinguish them, we refer to Kenneth Berry and his company collectively as the "Berry Parties." Berry's The Port of Corpus Christi, L.P., was sued in state court by the Port of Corpus Christi Authority of Nueces County, Texas ("Port Authority"), for service mark dilution and infringement in April 2018. The Port Authority is a creature of Texas statute. *See* Texas Special District Local Laws Code Ch. 5016.[1] In February 2022, the Port Authority filed its Second Amended Petition, added Kenneth Berry as a party, and asserted claims for trespass under Texas common law. We do not address the merits of either claim.

In this case, much of the discussion concerns a permit issued by the United States Army Corps of Engineers ("Corps"). Neither of the Berry Parties is the permittee. Instead, the permit was issued to Moda Ingleside Oil Terminal, LLC, which is also known as Enbridge Ingleside Oil Terminal, LLC ("Moda/Enbridge"). The permit authorized improvements to the company's facilities, including construction of what appears to be five new barge docks for the oil terminal. The permit allowed Moda/Enbridge to "conduct maintenance dredging operations" pursuant to specified terms and

---

[1] The Port Authority was formerly known as the Nueces County Navigation District No. 1; the legislature adopted the current name in 1981. *See* Texas Special District Local Laws Code § 5016.0002. It is a centenarian "governmental agency and body politic incorporated with governmental powers and existing under the laws of the State of Texas. . . . After an election on October 31, 1922, it was created under Article 3, Section 52 of the Constitution and the General Laws of the State of Texas. . . . [In 1931, it] was duly converted to a Navigation District operating under Article 16, Section 59, of the Constitution of the State of Texas (Conservation and Reclamation) and the laws applicable thereto." *Meaney v. Nueces Cnty. Nav. Dist. No. 1*, 222 S.W.2d 402, 404 (Tex. Civ. App. — San Antonio, 1949, writ ref'd) (quotation marks omitted).

No. 22-40124

conditions for compliance with federal regulations. Dredging involves the removal of sea bottom from a subsurface location to a Dredge Material Placement Area ("DMPA"). The Corps' permit required Moda/Enbridge to deposit the dredged spoil on Berry Island, an approved DMPA. After the spoil is deposited, the solid particles settle, and the liquid decants through a piping system back into Corpus Christi Bay.

Under the permit, Moda/Enbridge was required to enter into "a land use agreement with the Port of Corpus Christi as outlined in Attachment A." The district court found it unclear what "Port of Corpus Christi" referenced — Berry's company or the governmental entity. We find some clarity is provided by Attachment A, labeled "Mitigation Plan." The lengthy attachment describes the planned improvements to the Moda/Enbridge terminal. Primarily, though, it outlines mitigation objectives and tasks. It refers several times to the "PCCA," which it identifies as the "Port of Corpus Christi Authority." It also has this reference: "The permittee [Moda/Enbridge] is negotiating a land use agreement with PCCA, owners of the submerged land." The district court found only one land use agreement in the record, an easement between Moda/Enbridge and the Berry Parties, and it allowed the dredged spoil to be placed on Berry Island. For purposes of our analysis, we accept that the permit and its attachments are referring to the Berry company as a party to the land use agreement.

The permit granted to Moda/Enbridge expresses these limitations:

a. This permit does not obviate the need to obtain other Federal, state, or local authorizations required by law.
b. This permit does not grant any property rights or exclusive privileges.
c. This permit does not authorize any injury to the property or rights of others.

3

No. 22-40124

The permit also states the federal government in no way "assume[s] any liability for . . . [d]amages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit."

In its Second Amended Petition, the Port Authority alleged the dredging operations on Berry Island resulted in physical trespasses and encroachments on its submerged land. Specifically, the petition added one count for Texas common law trespass, sought a temporary restraining order, and sought a temporary and permanent injunction. The Port Authority claimed "the dredge placement activities on Berry Island have in the past resulted, and in the future are practically certain to result, in suspended solids and other materials encroaching upon Plaintiff's submerged land," which adjoins Berry Island in the La Quinta Ship Channel. The Port Authority complained of sand, clay, and large, loose concrete or stones — called "rip rap" — that the defendants placed onto the Port Authority's submerged land, as well as a dredge pipe affixed over their land. These "obstructions" create "sandbars and islands that can be viewed above the low tide water line," which interfere with their "use of the submerged area in conjunction with the Corpus Christi Ship Channel and the La Quinta Ship Channel."

On February 14, 2022, after the Port Authority filed its Second Amended Petition raising the DMPA issues, the Berry Parties removed the case to the United States District Court for the Southern District of Texas. The Port Authority's complaint expressly disclaimed any issue regarding permit compliance, and it stated its claim exclusively in terms of Texas common law trespass. Nonetheless, in an amended Notice of Removal filed on February 23, 2022, the Berry Parties asserted federal jurisdiction on these grounds: (1) Federal Officer Removal Jurisdiction under 28 U.S.C. § 1442(a); (2) Federal Question Jurisdiction under 28 U.S.C. § 1331; and (3) Admiralty/Maritime Jurisdiction under 28 U.S.C. § 1333(1).

Case 2:22-cv-00030 Document 39 Filed on 04/06/23 in TXSD Page 5 of 13
Case: 22-40124 Document: 00516702897 Page: 5 Date Filed: 04/06/2023

No. 22-40124

The district court granted the Port Authority's motion to remand. It held federal-officer jurisdiction does not exist because the Berry Parties do not hold any federal permits, are not operating "under" the direction of any federal officer, and are not acting in the interest of the federal government. As to federal-question jurisdiction, the court held that the presence of federal dredging permits does not displace or preempt state tort law. Further, the Port Authority's requested remedy of money damages to pay for remediation does not require federal oversight. Finally, as to admiralty or maritime jurisdiction, the court concluded that "[w]ithout a separate basis for jurisdiction, an admiralty or maritime claim is not removable," and the cases to the contrary on which the Berry Parties relied are "no longer authoritative."

The Berry Parties appealed, and the district court denied their motion to stay the remand during the appeal. On the same day as the Berry Parties' notice of appeal, Moda/Enbridge filed a notice of intervention in the Texas state court proceeding. The parties disagree about whether the case has been remanded.

## DISCUSSION

The Berry Parties raise three issues on appeal. First, they seek reversal of the district court's order denying removal for their failure to demonstrate they are entitled to remove under the federal officer removal statute. Second, and in the alternative, they seek reversal of the district court's order denying removal for failure to demonstrate that the Port Authority's claims raise a federal question. Third, they argue this case arises under maritime and admiralty jurisdiction, which the district court determined they abandoned for failure to address the argument in a response at the district court level.

Case 2:22-cv-00030 Document 39 Filed on 04/06/23 in TXSD Page 6 of 13
Case: 22-40124 Document: 00516702897 Page: 6 Date Filed: 04/06/2023

No. 22-40124

An order to remand a case to state court is generally nonreviewable. 28 U.S.C. § 1447(d). Even so, when removal is sought under Section 1442 or 1443, the remand "shall be reviewable by appeal or otherwise." *Id.* The district court's remand order is reviewed *de novo*, "without a thumb on the remand side of the scale." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc) (quotation marks and citation omitted). Federal officer removal differs from other removal doctrines because "it is not narrow or limited." *Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017) (quotation marks and citations omitted). Because part of the district court's order granting remand turned on federal officer removal under Section 1442, we review the district court's order in its entirety. *See BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1542–43 (2021).

## I. *Federal officer removal*

We begin with the federal officer removal statute. We recently reexamined our caselaw regarding the statute. *See Latiolais*, 951 F.3d 286. In *Latiolais*, we declared that in order to remove under Section 1442(a), the defendant must show "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Id.* at 296.

The district court applied that test and focused primarily on the third element. The district court found the defendants were not acting pursuant to any federal authority. The district court stated the Berry Parties "appear[ed] to assume that they have demonstrated the first three elements by simply referencing the [Corps'] DMPA permit." The Port Authority, in response to the notice of removal, argued the defendants did not meet their burden to establish the third element and disputed their assumptions under the first and fourth elements.

No. 22-40124

The Port Authority and the district court relied heavily on *Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142 (2007). The *Watson* Court concentrated on the language of the second and third elements in holding that a party does not come within the scope of the federal officer removal statute by mere compliance with federal regulations. *Id.* at 151–52. Specifically, the Court stated that

> precedent and statutory purpose make clear that the private person's "acting under" must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior. In our view, the help or assistance necessary to bring a private person within the scope of the statute does not include simply complying with the law.

*Id.* at 152 (emphasis omitted) (citations omitted). Further, the Court considered a similar, though distinguishable, situation as the one here:

> The question before us is whether the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope of the italicized language ("*acting under*" an "*officer*" of the United States) and thereby permits removal. We hold that it does not.

*Id.* at 145 (emphasis in original).

The district court determined that "[d]elegation of federal governmental authority is what triggers the statute, not the status of being regulated and therefore subject to federal authority wielded by others." Relying on *Watson*, the district court found that "[n]othing in the materials of record demonstrates that either Defendant has acted to help or assist any federal officer or agency." The district court also found the Berry Parties had not demonstrated they are federal permittees. The only permittee of record was Moda/Enbridge. In reaching its decision, the district court did not consider the other three elements in *Latiolais*.

7

No. 22-40124

On appeal, the Berry Parties rely on one of our decisions that considered the third element in some detail. *See St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447 (5th Cir. 2021). There, we examined "the *relationship* between the removing party and the relevant federal officer," which requires "courts to determine whether the federal officer exert[s] a sufficient level of subjection, guidance, or control over the private actor." *Id.* at 455 (emphasis in original) (quotation marks and citation omitted).

The Berry Parties assert that Moda/Enbridge's permit with the Corps establishes this causal "relationship" between the Berry Parties and the Corps. Further, they contend they are not merely complying with the law but, instead, are carrying out the duties or tasks of the federal authority. The problem here is there is no federal endeavor involved with this permit, *i.e.,* there is no task or duty of a federal officer or agency the Berry Parties are carrying out. It is true the Corps authorized Moda/Enbridge to dredge and dump spoil on Berry Island. The permit, though, is allowing a private company to improve its berths for barges in a manner consistent with federal law.

The Berry Parties argue that "more attenuated relations" than theirs with the federal government have allowed appeal under Section 1442. They cite a series of cases demonstrating the difference between a private party acting under federal authority and one merely being regulated. The Port Authority, though, correctly summarizes that these opinions "dealt with a private party performing a government task delegated to it by the government, typically through a contract." The cases the Berry Parties cite are readily distinguishable:

- *Latiolais* involved a federal contractor hired by the U.S. Navy to build and refurbish the Navy's own vessels. 951 F.3d at 289. Because the

8

Case 2:22-cv-00030 Document 39 Filed on 04/06/23 in TXSD Page 9 of 13
Case: 22-40124 Document: 00516702897 Page: 9 Date Filed: 04/06/2023

No. 22-40124

alleged negligence occurred "during the refurbishment of the USS *Tappahannock*" pursuant to a federal contract, the private entity was acting "pursuant to directions of the U.S. Navy" and the "civil action relate[d] to an act under color of federal office." *Id.* at 296.

- *St. Charles* vacated a remand order where "the Office of Personnel Management . . . contracted with BCBS for administration of claims under federal health insurance plans," one of the Office's own governmental obligations. 990 F.3d at 451, 455.

- *Zeringue* held that "Crane's provision of parts in an effort to assist the Navy's construction of [Navy] vessels satisfies the 'acting under' requirement." *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017). There, "the Navy directed Crane to build parts, and, had Crane not done so, the Navy would have had to build those parts instead." *Id.*

- *Humphries* dealt with a private party that "constructed and operated [a] federal facility" and thus asserted the "government contractor defense." *Humphries v. Elliott Co.*, 760 F.3d 414, 415 (5th Cir. 2014) (quotation marks and citation omitted).

- *Thornburg* held a bankruptcy trustee was "acting under" a federal officer because he was "appointed pursuant to federal law by the U.S. Trustee for the purpose of assisting the U.S. Trustee with especially heavy Chapter 13 bankruptcy caseloads" and was "tasked with carrying out the provisions of the Bankruptcy Code." *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014).

The Berry Parties must show their activities "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis omitted). Acting consistently with a federal permit that authorized and set conditions for making improvements to the berths for barges at a private oil terminal is not carrying out a federal officer's tasks or duties. Because they do not satisfy the requirement of assisting or carrying out the duties of a federal officer, we need not consider

9

Case 2:22-cv-00030   Document 39   Filed on 04/06/23 in TXSD   Page 10 of 13
Case: 22-40124   Document: 00516702897   Page: 10   Date Filed: 04/06/2023

No. 22-40124

the other elements for federal officer removal. The district court did not err in denying removal on the basis of the federal officer removal statute.

## II. *Federal question jurisdiction*

In the alternative, the Berry Parties contend this case arises under federal law because "any challenge to their operations constitutes a collateral attack on the [Corps'] authority pursuant to federal statutes — the Rivers and Harbors Act and Clean Water Act — and associated federal regulations."

The district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Removal based on federal-question jurisdiction is permitted by 28 U.S.C. § 1441(a). Unlike federal officer removal under Section 1442, removal based on federal question is "strictly construed against removal," with doubts resolved in favor of remand in recognition of the interests of comity with state court jurisdiction. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). "'[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).

In addition, "[a] plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist." *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013) (quotation marks and citation omitted). "[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* (emphasis in original) (quotation marks and citation omitted). Moreover, "it is the

character of the action and not the defense which determines whether there is federal question jurisdiction." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983).

The Port Authority's complaint alleges state-law trespass claims that do not implicate any federal law. When the claim is based on state law, a federal issue can be a basis for federal jurisdiction, but the federal issue is not automatically a sufficient basis:

> Only in a special and small category of cases will federal jurisdiction exist when state law creates the cause of action. That limited category of federal jurisdiction only exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

*Board of Comm'rs v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 721-22 (5th Cir. 2017) ("*Tennessee Gas*") (quotation marks and footnotes omitted). In *Tennessee Gas*, we held the plaintiffs' state-law claims for negligence and nuisance properly relied on standards and duties of care that arose from federal law, and those federal standards created the necessary federal-question jurisdiction. *Id.* at 722-23.

The district court here determined the defendants' arguments "for finding a federal question embedded in the Port Authority's trespass claim [were] based on the premise that Defendants' actions were authorized, prescribed, and [were] perpetually regulated by the [Corps] pursuant to federal statutes and regulations." The defendants relied on the Rivers and Harbors Act, the Clean Water Act, "a host of federal regulations," and the Corps' Navigation Servitude. The district court rejected the argument, holding the Corps "has not exercised any right of condemnation or otherwise

11

Case: 2:22-cv-00030 Document 39 Filed on 04/06/23 in TXSD Page 12 of 13
Case: 22-40124 Document: 00516702897 Page: 12 Date Filed: 04/06/2023

No. 22-40124

assumed jurisdiction over the Port Authority's property rights" or their interests.

To resolve the claims here, the Texas law of trespass needs to be applied to these facts because the relevant duties and standards are not created by federal law. As defined in Texas law, a trespass is an "(1) entry (2) onto the property of another (3) without the property owner's consent or authorization." *See Environmental Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015). The Rivers and Harbors Act, the Clean Water Act, and other referenced federal statutes and regulations are irrelevant to the Port Authority's complaint.

We agree with the district court that the Port Authority's complaint "disclaims any issue regarding permit compliance, stating its claim exclusively in terms of Texas state law: common law trespass." The Port Authority did not allege a violation of either the Clean Water Act or the Rivers and Harbors Act. These laws do not "create[] the cause of action" and are not necessary to the Port Authority's "right to relief." *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). Also important, the Clean Water Act's federal permit program does not preempt all state common law causes of action. *See International Paper Co. v. Ouellette*, 479 U.S. 481, 497–98 (1987).

Finally, the Berry Parties argue the remedies sought by the Port Authority implicate federal law because they seek to impose injunctive remedies against the Corps. Actually, such relief is not requested.

There is no federal issue raised by the Port Authority under any of the theories suggested by the Berry Parties.

Case 2:22-cv-00030 Document 39 Filed on 04/06/23 in TXSD Page 13 of 13
Case: 22-40124 Document: 00516702897 Page: 13 Date Filed: 04/06/2023

No. 22-40124

### III. *Admiralty/maritime jurisdiction*

The Berry Parties also argue this case arises under maritime and admiralty jurisdiction. The district court determined the defendants abandoned this basis for removal because they did not address it in their response or sur-reply to the Port Authority's motion to remand. The Berry Parties contend this basis for removal is not waived because these arguments were "incorporated by reference from the Removal" pursuant to Rule 10(c) of the Federal Rules of Civil Procedure. Even so, the Berry Parties failed to address the Port Authority's citations to cases holding that maritime cases filed in state court cannot be removed to federal court, unless an independent basis for federal jurisdiction exists. *See Barker v. Hercules Offshore*, Inc., 713 F.3d 208, 220 (5th Cir. 2013).

We agree there was insufficient briefing on this issue in district court. The arguments presented on appeal are also thin. Essentially, the argument rests on the fact that Berry Island is in "navigable water." That is it. That is not nearly enough.

AFFIRMED.